**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**SEAN McTERRELL,**

                                        **Plaintiff,**

**v.**

                                                                **18-CV-1028-JLS-HKS**

**CARL J. KOENIGSMANN,** *et al.,*

                                        **Defendants.**

_____

## REPORT, RECOMMENDATION, AND ORDER

          This case was referred to the undersigned by the Hon. John L. Sinatra,

Jr., pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report

upon dispositive motions.  Dkt. No. 50, 88.  Plaintiff Sean McTerrell is a prisoner in the

custody of New York's Department of Corrections and Community Supervision

("DOCCS").  He brings this action against various medical providers and security staff

employed by DOCCS at Five Points Correctional Facility, Attica Correctional Facility,

and Southport Correctional Facility.[1]  Currently before the Court is Defendants' partial

motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Dkt. No. 84.  Although McTerrell has failed to file an opposition, the Court must address

---

[1] In the amended complaint, McTerrell identifies the following defendants: (1) Carl
Koenigsmann, (2) John Morley, (3) Southport Nurse Jane Doe, (4) Albert Galante, (5) Frank
Galante, (6) Attica Doctors John and Jane Does, (7) Corrections Officer Sergeant Long, (8)
Corrections Officer Forster, (9) Corrections Officer Long, (10) Corrections Officer Skoczylas,
(11) Corrections Officer Roberts, (12) Attica Corrections Officer John and Jane Does, (13)
Donna Bonning, (14) Kathleen Sault, (15) Donald Yates, (16) Susan Lamb, (17) Nurse Kasal,
(18) Stephen Laskowski, (19) Deborah Graf, (20) David Williams, (21) Five Points Corrections
Officers John and Jane Does, (22) Five Points Policymakers John and Jane Does, and (23)
Nurse Waters.  Dkt. No. 70 at 1-8.  The Court notes that Nurse Waters is not identified in the
docket as a defendant, but is identified as such in the body of the amended complaint.  The
Clerk of Court should be directed to amend the docket to reflect that Nurse Waters is a
defendant and cause the U.S. Marshals Service to serve Nurse Waters in accordance with Dkt.
No. 71.

the merits of the motion.  *See McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000).

For the following reasons, it is recommended that Defendants' motion be GRANTED IN

PART and DENIED IN PART.


## DISCUSSION

McTerrell has been in DOCCS custody since July 2015, and he generally

alleges that he was mistreated by medical and security staff at Five Points, Attica, and

Southport.  In his amended complaint, McTerrell raises fourteen claims related to

several distinct incidents involving more than twenty defendants.  Defendants now move

to dismiss some, but not all, of the claims.  For ease of analysis, the Court will discuss

each challenged claim—and the factual allegations relevant to each claim—separately.


**Motion to Dismiss Standard**

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  *Iqbal*, 556 U.S. at 678.  Application of this standard is "a context-specific task

that requires the reviewing court to draw on its judicial experience and common sense."

*Id.* at 679.  "In adjudicating a Rule 12(b)(6) motion, a district court must confine its

consideration "to facts stated on the face of the complaint or incorporated in the

complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999); *see also Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

**First Claim – Denial of HIV Medication at Southport**

**<u>Factual Background</u>**

On April 13, 2018, while McTerrell was housed at Southport, he was transferred to the facility's Special Housing Unit ("SHU").  Dkt. No. 70, ¶ 47.  Defendants Susan Lamb and Nurse Waters were nurses at Southport, and they were "tasked with" providing McTerrell with medical care and treatment, "including the administration" of his HIV medication.  Dkt. No. 70, ¶ 46.  McTerrell alleges that, from April 13, 2018 to April 18, 2018, Lamb and Waters refused to provide HIV medication to him, despite knowing of the "risks associated with not timely and properly [dispensing] HIV medications."  Dkt. No. 70, ¶ 48.  Specifically, the "abrupt cessation or denial of HIV medication can entail serious illness and death."  Dkt. No. 70, ¶ 60.  McTerrell also asserts more generally that the denial of his medication for that period of time exposed him "to an unreasonable risk of future harm."  Dkt. No. 70, ¶ 52.

McTerrell does not explicitly identify Waters and Lamb's reason for denying him his medication.  Reading the amended complaint liberally, the Court understands his theory to be that Lamb and Waters were irritated by his complaints of adverse reactions to his medication and responded by refusing to dispense it.  *See* Dkt. No. 70, ¶¶ 36, 37.  For example, McTerrell alleges that, on May 4, 2018, when he

3

complained that he was not tolerating his HIV medication well, Lamb responded, "[Y]ou don't want them, then die." Dkt. No. 70, ¶ 51. McTerrell argues that Lamb and Waters' actions constituted deliberate indifference to his medical needs in violation of his Eighth Amendment rights. Dkt. No. 70 at 12-14.

**Analysis**

Defendants argue that this claim fails because McTerrell does not allege that he suffered any "specific, concrete physical harm" as a result of Lamb and Waters' conduct. Dkt. No. 84-1 at 10-12. The Court is not persuaded.

"To establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove deliberate indifference to his serious medical needs." *Lombardo v. Graham*, 807 F. App'x 120, 122 (2d Cir. 2020) (summary order) (internal quotation marks omitted). "Deliberate indifference has objective and subjective components." *Id.* "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Brown v. Dodge*, No. 18-CV-6491, 2020 WL 6785502, at *4 (W.D.N.Y. Nov. 18, 2020). Defendants' argument implicates only the objective component.

"With respect to the objective component, the serious medical needs standard contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Alvarez v. Wright*, 797 F. App'x 576, 579 (2d Cir. 2019)

(summary order) (internal quotation marks and brackets omitted).  Where, as here, "the basis of the complaint is a temporary delay [in the provision of medical care], . . . it is appropriate to focus on the effect of that challenged delay in treatment in determining whether the [harm] was objectively serious."  *Id.*  Importantly, a temporary denial of medication may be sufficient to establish the objective component if it exposes the inmate "to an unreasonable risk of future harm," even if it does not immediately cause physical injury or harm.  *Smith v. Carpenter*, 316 F.3d 178, 187-88 (2d Cir. 2003) (noting that "demonstrable adverse medical effects" are "not required under the Eighth Amendment"); *see, e.g.*, *Rahman v. Schriro*, 22 F. Supp. 3d 305, 314 (S.D.N.Y. 2014) (inmate's allegation that body scanner exposed him to harmful radiation that could result in sterility and cancer was sufficient to establish objective prong, since "exposure to an unreasonable *risk* of future harm is itself actionable" even if the health problems "are mere possibilities that may arise at some unspecified time in the future"); *Sassi v. Dutchess Cty.*, No. 16-CV-1450, 2019 WL 401951, at *6 (N.D.N.Y. Jan. 31, 2019) (objective prong satisfied where county denied plaintiff the use of his CPAP machine for daytime naps; plaintiff presented sufficient evidence that absence of CPAP machine "exposed him to an unreasonable risk of future harm from his sleep apnea," notwithstanding that "he did not exhibit contemporaneous symptoms of this potential future harm"); *Abernathy v. Anderson*, 984 F.3d 1, 7-8 (1st Cir. 2020) (favorably citing case in which objective component was satisfied on theory that medical provider's failure to provide HIV medications made inmate "statistically more likely to develop cancer in the future").

In this case, McTerrell does not allege that he actually suffered any "concrete" injuries, pain, or adverse effects due to the temporary denial of his HIV medication. But he does allege that the abrupt cessation of his HIV medication can cause "serious illness and death." Dkt. No. 70, ¶ 60. McTerrell also claims that such delays cause the virus to multiply in his body. Dkt. No. 70, ¶¶ 52, 53. Reading the amended complaint liberally, the Court understands McTerrell to be arguing that, in light of his poor physical condition—he suffers from several serious ailments, including HIV, Hepatitis C, high blood pressure, epilepsy, diabetes, heart disease, and renal kidney failure—the increase in HIV in his body will have cascading effects on his health as a whole. As a result, the temporary denial of his medication exposes him to an "unreasonable risk of future harm." Dkt. No. 70, ¶ 52. At this early stage of the proceedings, and in the absence of a fully developed medical record, these facts appear sufficient to allege that even the brief denial of the HIV medication is "very likely to cause serious illness and needless suffering." *Smith*, 316 F.3d at 188; *see also id.* at 188 n.14 (cautioning that objective prong is "ill-suited for resolution at the pleading stage" in the absence of a "fully developed medical record").

Defendants do not argue that these allegations fail to establish an unreasonable risk of future harm; instead, they assert that the objective prong can only be satisfied with a showing of "concrete physical harm." Dkt. No. 84-1 at 11. Defendants cite *Leon v. Johnson*, 96 F. Supp. 2d 244 (W.D.N.Y. 2000), for that proposition. But *Leon* used that phrasing in the context of applying 42 U.S.C.

§ 1997e(e), not the Eighth Amendment's deliberate-indifference standard.[2]  *See Leon*, 96 F. Supp. 2d at 248.  As discussed above, under the relevant constitutional standard, "[a] future risk can suffice to constitute a substantial risk of serious harm, even if an inmate experiences no present symptoms."  *Shepherd v. Hogan*, 181 F. App'x 93, 95 (2d Cir. 2006) (summary order).  Defendants offer no reason why McTerrell's allegations are insufficient to meet that standard.

Therefore, the Court declines to dismiss McTerrell's first claim.

**Second Claim – Denial of HIV Medication at Attica**

**Factual Background**

In February 2019, McTerrell was being housed at Attica.  Defendant Donna Bonning was a nurse at the facility and was "charged with providing" McTerrell with his HIV medication.  Dkt. No. 70, ¶ 57.  McTerrell alleges that Bonning was aware of (1) McTerrell's HIV status; (2) his need for medications; and (3) "the risks associated with not timely and properly providing [him] with his needed HIV medication."  Dkt. No. 70, ¶¶ 58, 59.  Nevertheless, on three occasions in February 2019, Bonning "failed to provide [McTerrell] with his HIV medication[]."  Dkt. No. 70, ¶ 62.  McTerrell alleges that Bonning's actions "constituted her deliberate indifference" to his medical needs.  Dkt. No. 70, ¶ 63.

---

[2] Defendants do not raise any argument based on Section 1997e(e).

**Analysis**

Defendants argue that this claim fails because McTerrell has not sufficiently alleged that Bonning acted with the requisite intent.[3]  Defendants assert that the complaint "simply describes a negligent omission while reciting the legal conclusion that Defendant Bonning acted with deliberate indifference."  Dkt. No. 84-1 at 13.

As noted above, an Eighth Amendment claim based on the denial of adequate medical care has objective and subjective components.  *Chatin v. Artuz*, 28 F. App'x 9, 10 (2d Cir. 2001) (summary order).  "Subjectively, the official charged with deliberate indifference must act with a sufficiently culpable state of mind."  *Ruggiero v. Canfield*, No. 14-CV-307, 2017 WL 9485692, at *7 (W.D.N.Y. Mar. 23, 2017) (internal quotation marks omitted).  "In medical-treatment cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health."  *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).  "This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result."  *Id.*  "Although less blameworthy than harmful action taken intentionally and knowingly, action taken with reckless indifference is no less actionable. The reckless official need not desire to cause such harm or be aware that such harm will surely or almost certainly result. Rather, proof of awareness of a substantial risk of the harm suffices."  *Id.*

---

[3] Defendants also argue that, absent a concrete physical harm, McTerrell's allegations fail to establish the objective prong of his deliberate-indifference claim.  Dkt. No. 84-1 at 12.  For the same reasons discussed in the preceding section, the Court does not find Defendants' argument persuasive.

McTerrell has sufficiently alleged Bonning's subjective state of mind. Reading the amended complaint liberally, McTerrell asserts that Bonning was responsible for providing him with his HIV medication; that she was aware of his needs and of the risks that would result if he were to be deprived of the medications; and that she did not provide the medication on three occasions in February 2019.  Dkt. No. 70, ¶¶ 58, 59, 62.  Given her medical training and her role as the provider who dispensed the medication to McTerrell, a reasonable inference from these allegations is that Bonning withheld the medications "while actually aware of a substantial risk that serious [] harm [would] result."  *Salahuddin*, 467 F.3d at 280.  While not fully explicit in this respect, the amended complaint also suggests that Bonning and other medical staff at Attica sometimes withheld medication as a sort of punishment when McTerrell complained about adverse reactions or his medical treatment, falsely labelling McTerrell as "non-compliant with his medical regimen."  Dkt. No. 70, ¶ 37; *see also* Dkt. No. 70, ¶¶ 36-38, 68-71, 129.  Such allegations provide a motive for Bonning's actions and further corroborate McTerrell's allegation of deliberate indifference.

Defendants respond that, because McTerrell used certain phrasing suggestive of negligence, he has not stated a claim for deliberate indifference.  *See* Dkt. No. 70, ¶ 59 ("Nurse Bonning was aware *or should have been aware* of the risks associated with not timely and properly providing Plaintiff with his needed HIV medication . . . ." (emphasis added)).  That may be one interpretation of that phrasing, but it could be more favorably interpreted to mean that Bonning was, in fact, "aware" of the risk of harm McTerrell would suffer if she were to withhold his medication.  *Id.*  The

Court is obliged to adopt the more favorable interpretation in evaluating the sufficiency of the amended complaint.  *See Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 458 (2d Cir. 2019) ("In assessing a motion to dismiss, a court must view the evidence – and interpret any allegations – in the light most favorable to the plaintiff . . . .").

Accordingly, the Court concludes that McTerrell has adequately alleged the subjective component of his deliberate indifference claim against Bonning.

**Third Claim – Denial of Hepatitis C Medication at Attica**

**Factual Background**

Before his transfer to Attica, McTerrell contracted Hepatitis C, and "repeatedly requested" treatment from the other facilities at which he was housed.  Dkt. No. 70, ¶ 67.  It appears that medical providers at the other facilities refused to treat his Hepatitis C.  When he moved to Attica, McTerrell requested Hepatitis C treatment from several medical providers, including defendants David Williams, Deborah Graf, and other "John and Jane Doe" medical doctors.  They refused to treat him, ostensibly on the basis that McTerrell had been non-compliant with his HIV medication.  McTerrell alleges that this explanation was false, however, as he only refused to take his HIV medication because it caused adverse reactions.  Reading the complaint liberally, McTerrell alleges that Williams, Graf, and the unidentified medical doctors were all aware that McTerrell suffered from these adverse side effects, but they continued to characterize his situation as one of non-compliance and refused to treat his Hepatitis C. Dkt. No. 70, ¶¶ 36-37, 68-69, 70.  McTerrell argues that their failure to treat his Hepatitis

C has caused "conscious pain and suffering" and constitutes deliberate indifference to his medical needs.  Dkt. No. 70, ¶ 72.

### Analysis

  Defendants contend that both components of this deliberate-indifference claim are lacking.  On the objective component, Defendants argue that "[v]ague and nonspecific allegations of pain and suffering are insufficient" to survive a motion to dismiss.  Dkt. No. 84-1 at 13 (internal quotation marks omitted).  On the subjective component, they assert that McTerrell has failed to allege these medical providers "were aware of but intentionally ignored" his condition.  *Id.* at 14.  The Court disagrees on both points.

  McTerrell has sufficiently alleged the objective prong.  In contrast to the previous claims alleging delay of treatment, McTerrell here claims that prison staff wholly refused to treat his medical condition.  In that situation, the question for purposes of the objective prong is whether the underlying condition is "sufficiently serious." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998); *Smith*, 316 F.3d at 185-86.  "It is well-established that Hepatitis C is sufficiently serious to satisfy the objective prong of the test for deliberate indifference," *Parks v. Blanchette*, 144 F. Supp. 3d 282, 314 (D. Conn. 2015), and the "failure to treat [an inmate] actually suffering from [Hepatitis C] clearly satisfies the objective element of the deliberate indifference standard." *Scheckells v. Goord*, 423 F. Supp. 2d 342, 347 (S.D.N.Y. 2006).  Contrary to Defendants' argument, it is immaterial that McTerrell has only alleged "vague"

allegations of pain and suffering from the denial of treatment.  The risk of future harm resulting from untreated Hepatitis C can itself be sufficient to establish the objective prong.  In that respect, Defendants do not raise any dispute that untreated Hepatitis C is "very likely to cause serious illness and needless suffering."  *Smith*, 316 F.3d at 188.

McTerrell has also provided sufficient allegations concerning the subjective prong.  He alleges that the identified medical providers:  (1) knew of his Hepatitis C diagnosis; (2) were aware that McTerrell had repeatedly requested treatment; (3) were cognizant of the risks and seriousness of untreated Hepatitis C; and (4) nonetheless refused to provide treatment.  Dkt. No. 70, ¶¶ 67, 69, 71, 72.  To be sure, McTerrell also claims that these providers ostensibly refused to provide treatment on the basis that he was non-compliant with his other medications—an allegation that could suggest that the providers lacked the necessary state of mind.  *See, e.g.*, *Benitez v. Parmer*, 654 F. App'x 502, 505 (2d Cir. 2016) (summary order) (inmate failed to raise genuine dispute of fact regarding provider's subjective culpability, where provider made reasoned medical judgment that therapy was inappropriate given, *inter alia*, inmate's "history of non-compliance with medical treatment").  But reading the complaint liberally, McTerrell also alleges that this reason was pretextual:  medical providers characterized McTerrell's occasional refusal to take his HIV medication as "non-compliance" even though they knew he did so only because he did not tolerate his HIV medication well. Dkt. No. 70, ¶¶ 36-37, 68-71.  The amended complaint thus alleges that the providers' conduct goes beyond mere negligence or a "disagreement over the proper treatment." *Benitez*, 654 F. App'x at 505.  Williams, Graf, and the John/Jane Does chose not to

treat McTerrell's Hepatitis C "while actually aware of a substantial risk that serious inmate harm [would] result." *Id.* at 504.

For these reasons, the Court cannot conclude that the allegations related to McTerrell's third claim are insufficient on either prong of the deliberate-indifference standard.

**Fourth Claim – Denial of Treatment for Kidney Failure at Attica**

<u>**Factual Background**</u>

Since the start of his confinement in July 2015, McTerrell has suffered from renal disease and renal failure.  Dkt. No. 70, ¶ 74.  He was formally diagnosed with kidney failure in November 2018 at the "Wyoming County Community Health System facility," which he apparently visited while housed at Attica.  Dkt. No. 70, ¶ 75. However, McTerrell did not receive any treatment for his condition, even after he filed a grievance in December 2018.  Dkt. No. 70, ¶ 76.  It was not until April 2019 that McTerrell began receiving treatment and medication for his kidney condition.  Dkt. No. 70, ¶ 77.  He alleges that Williams, Graf, Laskowski, and other John/Jane Doe medical doctors were deliberately indifferent to his medical needs, because they "knew or should have known of [his] diagnosis" and "nevertheless failed to take action."  Dkt. No. 70, ¶ 78.

**Analysis**

Defendants argue that McTerrell's allegations are insufficient on both prongs of the deliberate-indifference standard.  Because the Court agrees that McTerrell has insufficiently alleged the subjective prong, it need not address the sufficiency of the objective prong.

To be deliberately indifferent, the defendant must have acted or failed to act "while *actually aware* of a substantial risk that serious inmate harm will result." *Salahuddin*, 467 F.3d at 280 (emphasis added).  Thus, a medical provider who is not aware of an inmate's condition, injury, or illness is not subjectively culpable for failing to treat it.  *See, e.g.*, *Mathison v. Moats*, 812 F.3d 594, 598 (7th Cir. 2016) (doctor could not be held liable for deliberate indifference to inmate's heart attack, where doctor "was not made aware of [the inmate's] condition" until hours later, when he "proceeded to give him emergency treatment and promptly summoned an ambulance to take him to the nearest hospital emergency room"); *Leonard v. Nesmith*, No. 18-CV-278, 2020 WL 3913809, at *3 (N.D.N.Y. June 16, 2020) (inmate's claim that medical provider failed to adequately treat lump on sternum failed, where provider examined inmate, discerned no lump, and therefore was "not aware of facts suggesting a risk of harm").

Here, McTerrell presents no allegations to suggest that the defendant providers were aware of his diagnosis.  For example, he does not claim that his diagnosis was shared by the Wyoming County facility with the medical staff at Attica; that he informed medical staff about his diagnosis; or that any of the medical providers

were made aware of his grievance seeking treatment. McTerrell only makes the conclusory allegation that these defendants "knew or should have known" about his diagnosis. Dkt. No. 70, ¶ 78. That is insufficient to state a plausible claim for relief. *See, e.g.*, *Ruiz v. Westchester Cty.*, No. 18-CV-7007, 2020 WL 4340788, at *6 (S.D.N.Y. July 28, 2020) (collecting cases); *Marino v. Koenigsmann*, No. 12-CV-1170, 2014 WL 1239514, at *9 (N.D.N.Y. Mar. 25, 2014).

Therefore, this claim should be dismissed.

**Fifth Claim – Failure to Protect at Attica**

<u>**Factual Background**</u>

In July 2018—while housed at Attica—McTerrell's mental health degraded because of the "effects of ill health" and his "conditions of [] confinement." Dkt. No. 70, ¶ 80. He attempted suicide on several occasions and was placed in SHU. On July 24, 2018, McTerrell suffered a manic episode, which caused him to hear "dead people's voices" and led him to believe that "the devil was in his cell." Dkt. No. 70, ¶¶ 81, 86. Unable to tolerate the situation, McTerrell attempted to hang himself. Correctional officers responded and were able to "talk[] [him] down." Dkt. No. 70, ¶ 82. McTerrell was transferred to the Mental Health Unit for an undisclosed period of time, but was returned to his cell in SHU "that same day." Dkt. No. 70, ¶ 83.

McTerrell refused to enter his cell, however, believing that he could still hear voices and that the devil was in his cell. Two officers—defendants Forster and

Sergeant Long—arrived to handle the situation.  McTerrell pleaded not to be returned to his cell.  Sergeant Long threatened to write up McTerrell if he did not return to his cell, and Forster told McTerrell, "You can go on your own or they will put you in there."  Dkt. No. 70, ¶ 87.  McTerrell followed their orders and entered his cell.  At some point thereafter, he again attempted suicide by hanging.  Forster and another officer were able to intervene and stop the attempt.

In his fifth claim for relief, McTerrell argues that Forster and Sergeant Long acted with deliberate indifference when they forced McTerrell back into his cell instead of referring him to mental health treatment.

**Analysis**

Defendants contend that McTerrell has not plausibly alleged that either Forster or Long possessed the necessary state of mind to sustain a deliberate indifference claim.  They note that Forster and Long are "non-medical personnel" who could not determine "whether [McTerrell] required further mental health services."  Dkt. No. 84-1 at 18.  Furthermore, they assert that McTerrell did not tell either officer "he was suicidal or intended to harm himself" and, regardless, Forster kept McTerrell "under close observation" and intervened swiftly to save him once he attempted suicide.  *Id.* Because Defendants' argument is premised on a less favorable interpretation of the amended complaint, the Court must reject it.

In the context of an inmate's risk of suicide, the subjective prong of the deliberate-indifference standard requires "a dual showing that the defendant: (1) subjectively knew the prisoner was at substantial risk of committing suicide; and (2) intentionally disregarded that risk." *Phillips v. Mitchell*, No. 19-CV-383, 2021 WL 1175051, at *4 (N.D.N.Y. Mar. 29, 2021) (quoting *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006)). Construing the amended complaint in the light most favorable to McTerrell, his allegations are sufficient to meet this standard with respect to Forster's and Long's subjective culpability.

McTerrell had attempted suicide earlier in the day before his interaction with Forster and Long. McTerrell was severely emotionally disturbed—he was hearing voices and believed the devil was in his cell. Those disturbances led to his first suicide attempt. It is reasonable to infer that Forster and Long were aware of the circumstances of McTerrell's first suicide attempt, as they were specifically called to assist with McTerrell's return from the Mental Health Unit to his cell in SHU. Moreover, McTerrell exhibited significant worry about entering his cell and disclosed to both Forster and Long that he was hearing voices and that the devil was in his cell—strong signs of continued emotional disturbance. In short, the risk that McTerrell would again attempt suicide if he was forced to return to his cell—clearly a location on which his disturbance was fixated—was obvious. *See Barrett v. Livingston Cty., N.Y.*, No. 14-CV-6593, 2019 WL 1083027, at *11 (W.D.N.Y. Mar. 7, 2019) ("A factfinder may [] conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." (internal quotation marks omitted)). Moreover, contrary to Defendants' claim,

17

the amended complaint does not indicate that officers took steps to keep McTerrell safe by putting him "under close observation."  Dkt. No. 84-1 at 18.  McTerrell merely alleges that when he did attempt suicide again, Officers Forster and Roberts were able to thwart the attempt.  Indeed, McTerrell alleges that those officers proceeded to beat him up— hardly the conduct of officers who were purportedly taking steps to ensure his safety. *See* Dkt. No. 70, ¶¶ 108-09.

Accordingly, the amended complaint sufficiently alleges that Long and Forster were aware of a substantial risk that McTerrell was a suicidal and that they ignored that risk by forcing him into his cell without any help or assistance.

**Eighth Claim – Excessive Force at Attica**

<u>**Factual Background**</u>

On August 25, 2018, while housed in SHU at Attica, McTerrell was served his morning meal by Corrections Officer Skoczylas.  Skoczylas provided McTerrell a cup of coffee, which he consumed.  Thereafter, McTerrell alleges that he "developed a severe throat infection" and experienced stomachaches and headaches.  Dkt. No. 70, ¶ 120.  McTerrell posits that Skoczylas spiked the coffee with urine.  Dkt. No. 70, ¶ 117. He also alleges that, two weeks later, Skoczylas provided another cup of coffee to him that contained urine, which he unwittingly consumed.  Dkt. No. 70, ¶ 121.

McTerrell alleges that Skoczylas' conduct constituted "excessive force" and "cruel and unusual punishment" in violation of his Eighth Amendment rights.  Dkt. No. 70, ¶ 122.

### Analysis

Defendants argue that McTerrell has not stated a claim for "excessive force" because he does not "describe any instance where Defendant Skoczylas used any physical force against [him]."  Dkt No. 84-1 at 17.

Defendants read McTerrell's claim too narrowly.  Regardless of his phrasing, in substance McTerrell is alleging that Skoczylas' actions violated his Eighth Amendment rights.  *See Khodeir v. Sayyed*, 348 F. Supp. 3d 330, 339 (S.D.N.Y. 2018) ("[U]nder the liberal rules of federal pleading, the label of a claim is not dispositive."). He presents a viable theory of liability.

"[T]he Eighth Amendment prohibition against cruel and unusual punishment requires that prisoners be served nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well[-]being of the inmates who consume it."  *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983); *see also United States v. Walsh*, 194 F.3d 37, 50 (2d Cir. 1999) ("[E]ven *de minimis* uses of force are unconstitutional [under the Eighth Amendment] if they are repugnant to the conscience of mankind." (internal quotation marks omitted)). The Eighth Amendment thus prohibits correctional officers from maliciously or

sadistically contaminating an inmate's food or drink.  *See, e.g.*, *Robles*, 725 F.2d at 16 (prison officials' alleged contamination of inmate meals with "dust, rocks, glass and human waste" stated claim for Eighth Amendment violation); *Carter v. Shepperson*, No. 19-CV-163, 2020 WL 6746789, at *7 (E.D.N.Y. Nov. 16, 2020) (plaintiff stated Eighth Amendment claim against correctional officer who allegedly "tainted [his] food with bleach and feces"); *Ballard v. Lane*, No. 18-CV-1721, 2019 WL 1129158, at *2 (S.D.N.Y. Mar. 12, 2019) ("Courts have held that allegations that a prisoner was served food contaminated or tainted by foreign objects, e.g. human waste, are sufficient to plead a constitutional violation." (internal quotation marks, brackets, and ellipses omitted)); *cf. Hogan v. Fischer*, 738 F.3d 509, 516-17 (2d Cir. 2013) (prison officials' conduct—spraying inmate with a "mixture of feces, vinegar, and machine oil"—is "undoubtedly a form of cruel and unusual punishment proscribed by the Eighth Amendment").

In this case, McTerrell alleges that Skoczylas served him coffee contaminated with urine for the "purpose of causing [him] harm."  Dkt. No. 70, ¶ 123. Skoczylas succeeded in that respect, as McTerrell subsequently developed a throat infection, along with headaches and stomach pains.  These allegations are sufficient to set forth a constitutional violation.  *See Robles*, 725 F.2d at 15.

This claim should not be dismissed on the ground raised by Defendants.

**Ninth Claim – Failure to Protect at Attica**

    <u>Factual Background</u>

        McTerrell alleges that, during his confinement at Attica, he received mental health treatment from Dr. Galante.  Dkt. No. 70, ¶¶ 127, 128.  On March 11, 2019, McTerrell met with Dr. Galante and disclosed that "nurses caring for him were not bringing him his HIV medication."  Dkt. No. 70, ¶ 129.  Despite his knowledge of the risks McTerrell faced if he did not receive his medication, Dr. Galante took no action in response, which thereby "caused [McTerrell] to be deprived of his HIV medication for an unreasonable amount of time."  Dkt. No. 70, ¶ 131.  McTerrell alleges that Dr. Galante's "fail[ure] to protect" him resulted in "[his] conscious pain and suffering" and constituted a violation of his Eighth Amendment rights.  Dkt. No. 70, ¶¶ 133, 134.

    <u>Analysis</u>

        Defendants argue that this claim should be dismissed because McTerrell has failed to sufficiently allege either prong of a deliberate-indifference claim.  Dkt. No. 84-1 at 15-16.  The Court is not persuaded.

        As to the objective prong, Defendants contend that McTerrell's alleged harm—"pain and suffering"—is too vague and unspecified to support a claim of deliberate indifference.  *Id.* at 16.  But, as the Court previously discussed, McTerrell's amended complaint can be liberally construed to allege that an abrupt, albeit temporary, cessation of his HIV medication exposes him to an "unreasonable risk of future harm,"

Dkt. No. 70, ¶ 52, and is "very likely to cause serious illness and needless suffering."

*Smith*, 316 F.3d at 188.  That suffices to meet the objective prong.

As for Dr. Galante's subjective culpability, Defendants assert that, at most, the amended complaint suggests that Dr. Galante was negligent, "which is insufficient to state a claim of deliberate indifference."  Dkt. No. 84-1 at 16.  To the contrary, McTerrell alleges that Dr. Galante:  (1) was explicitly informed that nurses were not dispensing McTerrell's HIV medication; (2) knew of the risks associated with the cessation of the medication; and yet (3) "took no further action" to ensure that McTerrell received his medication.  Dkt. No. 70, ¶¶ 129, 130, 134.  These allegations track the relevant standard—that "the prison official knew of and disregarded the plaintiff's serious medical needs."  *Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 441 (D. Conn. 2020). Accepting, for purposes of this motion, that Dr. Galante was informed that McTerrell was not receiving his HIV medication and knew that cessation of such medication posed serious risks to his health, Dr. Galante was obliged to take *some* action, even if it was not his specific responsibility to administer the medication itself.  *See Garcia v. Univ. of Conn. Health Care Ctr.*, No. 16-CV-852, 2018 WL 5830840, at *15 (D. Conn. Nov. 7, 2018) (noting that, even if nurses could not administer medication, they were obliged to seek out a physician's assistance once the inmate "request[ed] [medical treatment] and the circumstances support[ed] the request").

Accordingly, this claim should not be dismissed.

**Twelfth Claim – First Amendment Retaliation at Attica**

    <u>Factual Background</u>

        McTerrell alleges that a nurse at Attica—Nurse Sault—twice made false accusations that he had threatened her.

        The amended complaint does not state when the first incident occurred. At some undisclosed time, Nurse Sault filed a disciplinary report against McTerrell, claiming that he had threatened her.  Dkt. No. 70, ¶ 153.  Plaintiff alleges that Nurse Sault had filed the report to retaliate against McTerrell for filing complaints "against Nurse Administrator Michael, Dr. Williams, [and] Nurse Practitioner Laskowski."  *Id.*  A correctional officer investigated the alleged threat and found McTerrell "not guilty of the disciplinary infraction."  Dkt. No. 70, ¶ 154.  McTerrell alleges that he was found not guilty because video-surveillance footage confirmed that he had not threatened Nurse Sault at the time in question.  *Id.*

        The second incident occurred on October 31, 2018.  McTerrell had requested a "sick call," but Nurse Sault refused to see him.  When McTerrell informed Nurse Sault that he intended to file a grievance, Nurse Sault filed another disciplinary report in which she alleged that McTerrell had threatened her.  Again, McTerrell was found not guilty at a disciplinary hearing; indeed, Sault admitted that "her motive in filing the disciplinary report" was that McTerrell had "threatened to write her up."  Dkt. No. 70, ¶ 158.

McTerrell raises a First Amendment retaliation claim against Sault, alleging that he had a First Amendment right to file (and threaten to file) his grievances, and that her false disciplinary reports constituted unconstitutional "adverse actions" against him.

**Analysis**

Defendants argue that Sault is entitled to qualified immunity on this claim because it was not clearly established at the time of Sault's actions that McTerrell was engaging in constitutionally protected speech.

Qualified immunity protects a government official from liability for damages unless his actions violate a "clearly established statutory or constitutional right of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  A government official is entitled to qualified immunity if "(a) [her] action did not violate clearly established law, or (b) it was objectively reasonable for [her] to believe that [her] action did not violate such law."  *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007) (internal citations omitted).  "The defense of qualified immunity may properly be raised at the pre-discovery, motion-to-dismiss stage, because qualified immunity provides government officials immunity from suit rather than a mere defense to liability."  *Cozayatl Sampdero v. Schriro*, 377 F. Supp. 3d 133, 140 (D. Conn. 2019). Nevertheless, a defendant "advancing a qualified-immunity defense at the motion to dismiss stage face[s] a formidable hurdle," since "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those

that defeat the immunity defense." *Neary v. Wu*, 753 F. App'x 82, 84 (2d Cir. 2019)
(summary order).

A basic element of a First Amendment retaliation claim is that the speech
in question must be, in fact, protected. *See Smith v. Levine*, 510 F. App'x 17, 21 (2d
Cir. 2013) (summary order). Defendants contend that, for purposes of qualified
immunity, it was not clearly established that McTerrell's speech was protected at the
time of the incidents.

With respect to McTerrell's written grievances against Michael, Dr.
Williams, and Laskowski, the Court disagrees. To the contrary, "it is well established
that retaliation against a prisoner for pursuing a grievance violates the right to petition
government for the redress of grievances guaranteed by the First and Fourteenth
Amendments and is actionable under § 1983." *Dolan v. Connolly*, 794 F.3d 290, 294
(2d Cir. 2015). Defendants marshal no case law that suggests otherwise. Because
grievances are clearly protected speech, Sault is not entitled to qualified immunity with
respect to the first incident.

But as to McTerrell's oral threat that he *intended* to file a complaint or
grievance against Sault, the Court agrees that it was not clearly established in October
2018 that such speech constituted protected activity under the First Amendment. The
Second Circuit Court of Appeals has long noted that an inmate's First Amendment
rights may be limited to account for "his status as a prisoner" and "the legitimate

penological objectives of the corrections system," *Rodriguez v. Phillips*, 66 F.3d 470,

478 (2d Cir. 1995), and it has yet to "articulate a bright line rule regarding

constitutionally protected oral speech by an inmate." *Mazyck v. Keller*, No. 20-CV-6055,

2021 WL 1201224, at *8 (W.D.N.Y. Mar. 31, 2021).

       As is relevant here, neither the Second Circuit nor the Supreme Court has

decided whether an inmate's threat to file a grievance constitutes protected speech for

purposes of a First Amendment retaliation claim.  *See Gibson v. Fischer*, No. 10-CV-

968, 2014 WL 7178346, at *18 (N.D.N.Y. Dec. 15, 2014).  Other circuit courts are not

unanimous on the issue.  *Compare Entler v. Regoire*, 872 F.3d 1031, 1039, 1042-43

(9th Cir. 2017) (threat to initiate civil litigation constituted protected speech), *with*

*Davenport v. Szczepanski*, 704 F. App'x 602, 603 (7th Cir. 2017) (summary order)

("Although a prisoner has a First Amendment right to make grievances about conditions

of confinement, merely *threatening* to file a grievance against someone is not protected

activity." (internal quotation marks and citation omitted)), *and Faircloth v. Schwartz*, 673

F. App'x 791, 793 (10th Cir. 2016) (summary order).   In the Second Circuit, there is a

similar split among district courts.  *Compare Livingston v. Hoffnagle*, No. 19-CV-353,

2019 WL 7500501, at *13 (N.D.N.Y. Nov. 8, 2019) (collecting cases), *with Gibson*, 2014

WL 7178346, at *16-17, *with Edwards v. Horn*, No. 10-CV-6194, 2012 WL 760172, at

*14 (S.D.N.Y. Mar. 8, 2012), *and Henry v. Dinelle*, No. 10-CV-456, 2011 WL 5975027,

at *7 n.12 (N.D.N.Y. Nov. 29, 2011).

This Court need not evaluate these dueling positions or resolve the issue for itself.  It suffices to say that—as the above cases attest— "existing precedent" has not "placed the . . . constitutional question beyond debate."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).  Therefore, Sault is entitled to qualified immunity.  *Id.*; *accord Adams v. O'Hara*, No. 16-CV-527, 2018 WL 5728040, at *13 (N.D.N.Y. July 24, 2018) ("[I]t has not yet been clearly established that plaintiff's alleged warning to defendant [] that he would file a grievance is speech protected by the First Amendment.").

In short, McTerrell's First Amendment retaliation claim survives except insofar as it is premised on retaliation for his October 31, 2018 threat to file a grievance.

**Fourteenth Claim – Deliberate Indifference by Koenigsmann and Morley**

**Factual Background**

Koenigsmann was the "Chief Medical Officer" for DOCCS until late 2018, when Morley took over that role.  Dkt. No. 70, ¶¶ 5, 6.  McTerrell alleges that the Chief Medical Officer creates policies and procedures for the medical treatment of patients in DOCCS custody.  He claims that, in his case, medical policies that Koenigsmann and Morley promulgated caused the providers with whom he interacted to deny him treatment and medications.  Dkt. No. 70, ¶ 170.  McTerrell also claims that he "complained numerous times to [Koenigsmann's] office concerning his various medical ailments and substandard treatment relative to his serious medical conditions, thereby providing [Koenigsmann] and his office with notice of [his] medical conditions."  Dkt. No. 70, ¶ 171.

**Analysis**

Defendants argue that this claim must be dismissed because McTerrell has insufficiently alleged any personal involvement by Koenigsmann or Morley in the underlying medical mistreatment.  The Court agrees.

"[F]or deliberate-indifference claims under the Eighth Amendment against a prison supervisor, the plaintiff must plead and prove that the supervisor had subjective knowledge of a substantial risk of serious harm to an inmate and disregarded it." *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020).  In other words, "a plaintiff may not rely on a special test for supervisory liability."  *Id.*

In this case, McTerrell fails to allege that either Koenigsmann or Morley "personally knew of and disregarded an excessive risk to [his] health or safety" in promulgating the unidentified policies that caused his medical mistreatment.  *Id.* at 619. McTerrell only alleges that he filed complaints about his medical treatment with Koenigsmann's office.  Dkt. No. 70, ¶ 171.  Without more, that is insufficient to adequately plead Koenigsmann's subjective culpability.  There are no allegations that Koenigsmann reviewed McTerrell's complaints specifically or that he generally reviews and takes action on inmate complaints submitted to his office.  *See Donohue v. Manetti*, No. 15-CV-636, 2016 WL 740439, at *4-5 (E.D.N.Y. Feb. 24, 2016) (noting that district courts are divided over "whether a prison official's receipt of a grievance letter . . . is sufficient to establish personal involvement," but finding complaint insufficient because it

did not allege that the supervisory official "personally received, reviewed, or responded to [the] grievance").

Therefore, this claim should be dismissed.

**Official-Capacity Claims**

McTerrell purports to sue some of the individual defendants in their official capacities, including a "Jane Doe" nurse and Nurse Lamb.  Dkt. No. 70, ¶¶ 8, 10.  As Defendants correctly point out, however, state officials in their official capacities are not subject to suit under Section 1983.  *See* Dkt. No. 84-1 at 6-7; *see also Tompkins v. Beane*, No. 10-CV-1200, 2012 WL 3079537, at *6 (N.D.N.Y. July 30, 2012) (dismissing claims against corrections officers in their official capacities and noting that "[n]either a State nor its officials acting in their official capacities are 'persons' under § 1983").  To the extent McTerrell is attempting to sue any individual defendant in his or her official capacity under Section 1983, such claim must be dismissed.

**Leave to Amend**

Finally, the Court addresses one procedural matter.  Because the Court is recommending that McTerrell's fourth and fourteenth claims be dismissed due to the insufficiency of the allegations, it would ordinarily be appropriate to give him an opportunity to amend his complaint to bolster the deficient claims.[4]  *See Curry v.*

---

[4] Leave to amend need not be granted with respect to McTerrell's twelfth claim or official-capacity claims, which fail as a matter of law.  *See Reese v. FedEx Trade Networks Transp. & Brokerage, Inc.*, No. 19-CV-1698, 2020 WL 7232238, at *1 (W.D.N.Y. Oct. 28, 2020).

*Huntington Copper, LLC*, No. 12-CV-1673, 2014 WL 4828106, at *3 (N.D.N.Y. Sept. 29, 2014). As this Court has pointed out, this case is now more than two years old and has not even entered discovery. *See* Dkt. Nos. 77, 79, 91. As a result, a further round of amendment (and possible motion practice) may be a less efficient course. Instead, the Court recommends that Defendants be ordered to answer the operative amended complaint and that this case proceed to discovery. Once a scheduling order is issued, and discovery begins, McTerrell may then seek leave to file an amended complaint. This will allow the litigation to move forward without prejudicing McTerrell.

## CONCLUSION

For the foregoing reasons, the undersigned recommends that the Defendants' Motion to Dismiss (Dkt. No. 84) be GRANTED IN PART and DENIED IN PART. McTerrell's fourth claim (for denial of treatment for kidney failure) should be dismissed against all applicable defendants; McTerrell's twelfth claim (for First Amendment retaliation) should be dismissed to the extent it is premised on retaliation for his October 31, 2018 threat to file a grievance; McTerrell's fourteenth claim (for deliberate indifference) should be dismissed against all applicable defendants; and all official-capacity claims should be dismissed. Defendants' motion should otherwise be denied. The Court recommends that Defendants be ordered to answer the operative amended complaint (Dkt. No. 70), and that McTerrell not be granted leave to amend until a scheduling order has been entered. The district court should direct the Clerk of Court to amend the docket to reflect that Nurse Waters is a defendant and cause the U.S. Marshals Service to serve Nurse Waters in accordance with Dkt. No. 71.

Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b)(2) and Local Rule 72.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.** *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72 of the Local Rules for the Western District of New York, "written objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection, and shall be supported by legal authority." In accordance with the requirements set forth in Local Rule 72, "[a]ny party filing objections to a

Magistrate Judge's order or recommended disposition must include with the objections to the District Judge a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge." **Failure to comply with the provisions of Local Rule 72 may result in the District Judge's refusal to consider the objection.**

       **SO ORDERED.**

DATED:      Buffalo, New York
              August 18, 2021

                                 *s/ H. Kenneth Schroeder, Jr.*
                                 **H. KENNETH SCHROEDER, JR.**
                                 **United States Magistrate Judge**